BRIGGS, Appellee,

v.

DINSMORE TOWNSHIP BOARD OF ZONING APPEALS, Appellant.

[Cite as *Briggs v. Dinsmore Twp. Bd. of Zoning Appeals,*
161 Ohio App.3d 704, 2005-Ohio-3077.]

Court of Appeals of Ohio,
Third District, Shelby County.

No. 17–05–01.

Decided June 20, 2005.

Michael F. Boller, Assistant Shelby County Prosecuting Attorney, for appellant.

Steven J. Geise, for appellee.

SHAW, Judge.

{¶ 1} Although this case was originally placed on our accelerated calendar, we have elected, pursuant to Loc.R. 12(5), to issue a full opinion in lieu of a judgment entry.

{¶ 2} The Dinsmore Township Board of Zoning Appeals appeals the judgment of the Shelby County Court of Common Pleas, which reversed and vacated the board's decision to deny a zoning variance to Thomas Briggs.

{¶ 3} On September 20, 1999, Briggs applied for a building permit application in Shelby County, Ohio for the construction of a new residential home located in Dinsmore Township. The building permit application specified for the construction of a new residence without an attached garage. The land on which Briggs asked to build his residence was zoned an agriculture district; therefore, Briggs subsequently filed an application for a zoning permit. On this application, Briggs asked to construct a new residence with a garage.[1] With the permits, Briggs submitted a sketch of where the residence and a garage would be located. Both permits were granted, and the residence was built; however, Briggs did not construct a garage.

{¶ 4} Two years later, in 2001, the Dinsmore Township Zoning code was amended to prohibit the construction of garages and outbuildings in the front yards of residences. The amendment prohibited Briggs from building an at-

---

1. The application for zoning permit did not state whether the garage was attached to the residence.

tached garage at the location on his property according to Briggs's original residential sketch.

{¶ 5} In 2004, Briggs decided to commence a metal-fabrication business on his property. Accordingly, on March 24, 2004, he filed an application for a zoning variance, which requested permission to build an "Accessory Building (separate garage) built in front of residence which will operate as a small fabricating shop." A hearing was held on June 2, 2004, and on July 14, 2004, the board denied the application for a zoning variance, stating the following findings of fact and conclusions of law:

*Findings of Fact:*

1. Granting the variance is not in accord with the general purpose and intent of regulations in that the general intent and purpose is not keep all accessory buildings no nearer to [the] front line than the principal use of structure;

2. The granting of the variance would not permit the establishment of any use not otherwise permitted;

3(a) There are no special circumstances or conditions applicable to the land or structure sought which are peculiar to such land or structure which do not apply generally to land or structures in the area;

(b) Denial of the variance would not deprive the applicant of the reasonable use of the land;

4. The hardship complained of is self-created by the applicant in that:

(a) Landowner/applicant has made the decision to attempt the construction and use of accessory building in a location in front of the principal residence;

(b) Landowner failed to timely construct building at time that had a building permit that might have contemplated the accessory building and failed to construct the building prior to changes in zoning for which he now makes a variance request;

5. The variance is not necessary for the reasonable use of the land for its primary purpose;

6. The variance would not impair adequate supply of light or air to adjacent properties, substantially increase congestion, increase danger of fire, endanger public safety or substantially diminish or impair property values of adjacent areas.

Conclusions:

1. An examination of the 1999 building permit application does not reflect a request for an accessory building as the only box checked was for the principal residence;

2. Applicant failed to timely construct any accessory building before current zoning went into effect;

3. Since the proposed variance is not within the general purpose of the area, there are no unique or special circumstances justifying the granting of a variance, it would not deny applicant the reasonable use of his property for its principal use, and the claimed hardship is self-created.

{¶ 6} Briggs appealed this ruling to the Shelby County Court of Common Pleas. The common pleas court reversed and vacated the board's decision, stating that "Briggs has shown by a preponderance of substantial, reliable, and probative evidence that there is no reasonable basis for the board to have denied the application for the variance." The board appeals, alleging one assignment of error:

No evidence was presented in this case to justify the granting of a variance so as to allow a business use on a residential property.

R.C. 2506.04 states:

The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules.

{¶ 7} The Ohio Supreme Court has held that an appellate court has a limited standard of review in an R.C. 2506.04 appeal. *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. The court stated:

Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by the common pleas courts and the courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is *"more limited* in scope." (Emphasis added.) *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not

include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

\* \* \*

This court has held that in administrative appeals under R.C. 2506.04, "[w]ithin the ambit of 'questions of law' for appellate court review would be abuse of discretion [sic] by the common pleas court." *Kisil,* supra, at fn. 4.

Id. at 147–148, 735 N.E.2d 433. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 8} Section 1111 of the Dinsmore Township Zoning Ordinance lists six factors that must be satisfied before a zoning board can grant a variance. They are:

1. The granting of the variance is in accord with the general purpose and intent of the regulations imposed by this Resolution and the district in which it is located, and will not be injurious to the area or otherwise detrimental to the public welfare;

2. The granting of the variance will not permit the establishment of any use not otherwise permitted in the district.

3. There exists special circumstances or conditions applicable to the land or structures for which the variance is sought which are peculiar to such land or structures, which do not apply generally to land or structures in the area, and which are such that the strict application of the provisions of this Resolution would deprive the applicant of the reasonable use of such land or structures. Mere loss in value shall not justify a variance; there must be deprivation of the beneficial use of land.

4. Hardship will be created by the strict application of this Resolution. It is not sufficient proof of hardship to show that greater profit would result if the variance were granted. The hardship complained of cannot be self-created, and must be suffered directly by the property in question. Evidence of variances granted under similar circumstances need not be considered.

5. The granting of the variance is necessary for the reasonable use of the land or structures, and the variance requested is the minimum variance that will accomplish this purpose.

6. The proposed variance will not impair an adequate supply of light or air to adjacent property, substantially increase congestion in the public streets, increase the danger of fire, endanger the public safety or substantially diminish or impair property values of the adjacent area.

{¶ 9} In the instant case, the trial court relied on *Burkholder v. Twinsburg Twp. Bd. of Zoning* (1997), 122 Ohio App.3d 339, 701 N.E.2d 766, in reversing and vacating the board's decision to deny the application for a variance. *Burkholder*, which is essentially a reiteration and application of the Ohio Supreme Court opinion *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, held that in order to grant an area variance to a zoning ordinance, a landowner must demonstrate "practical difficulties"—i.e., an unreasonable deprivation caused by a zoning requirement—in complying with a zoning regulation. *Burkholder*, 122 Ohio App.3d at 343, 701 N.E.2d 766. In determining whether a landowner has suffered an unreasonable deprivation in the use of his property, a reviewing court must weigh the seven factors established in *Duncan* to determine whether the private interests outweigh the public interest. Id.

{¶ 10} The trial court in the case sub judice balanced the seven *Duncan* factors and concluded that "Briggs has shown by a preponderance of substantial, reliable and probative evidence that there is no reasonable basis for the board to have denied the application for the variance." After reviewing this decision, however, we conclude that the application of the "practical difficulties" standard as outlined in *Duncan* and *Burkholder* constitutes an abuse of discretion.[2]

{¶ 11} In *In re Appeal of Am. Outdoor Advertising, L.L.C.*, 3rd Dist. No. 14–02–27, 2003–Ohio–1820, 2003 WL 1835525, at ¶ 8–9, we stated:

In two cases involving municipal corporations, the Ohio Supreme Court adopted separate standards for determining the appropriateness of use and area variances, holding that a use variance should be granted whenever a property owner demonstrates that the literal enforcement of the zoning regulation to his property creates an "unnecessary hardship," and an area variance should be granted whenever a property owner demonstrates that a zoning regulation causes "practical difficulties." [*Kisil*, 12 Ohio St.3d at 32, 12 OBR

---

2. See *Henley*, 90 Ohio St.3d at 148, 735 N.E.2d 433 (holding that an appeals court did not exceed the proper scope of review under R.C. 2506.04 when it sought to determine whether a local zoning regulation applied to the undisputed facts in the record, or whether the common pleas court abused its discretion by failing to apply the local zoning regulation).

26, 465 N.E.2d 848; *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 86, 23 OBR 212, 491 N.E.2d 692.] However, unlike municipalities, the authority of townships to enact zoning ordinances is not inherent, nor does it derive from a constitutional provision; instead, the Ohio Legislature, pursuant to R.C. Chapter 519, grants townships the authority, as a police power, to adopt and enforce zoning regulations.

* * *

R.C. 519.14 does not distinguish between a use and an area variance and does not mention the practical difficulties standard. Rather, R.C. 519.14(B) explicitly authorizes the granting of variances from a township resolution where "a literal enforcement of the resolution will result in an unnecessary hardship."

(Citation and footnotes omitted.)

{¶ 12} It is clear that Dinsmore *Township* is a township subject to Title V of the Ohio Revised Code, and Section 1111 of the Dinsmore Township Zoning Ordinance encompasses approximately the same standard established in R.C. 519.14(B). Specifically, Section 1111 of the Dinsmore Township Zoning Ordinance requires that an applicant show, inter alia, necessity and hardship. Nevertheless, when reviewing the board's decision, the trial court in the instant case applied the "practical difficulties" standard pursuant to *Burkholder* and *Duncan,* not the "unnecessary hardship" standard outlined in R.C. 519.14 and Section 1111 of the Dinsmore Township Zoning Ordinance. Accordingly, this constitutes an abuse of discretion, and the assignment of error is sustained.

{¶ 13} In conclusion, we remand this case to the trial court for a determination whether pursuant to R.C. 519.14 and Section 1111 of the Dinsmore Township Zoning Ordinance, the board's decision to deny Briggs's application for a variance is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by substantial, reliable, and probative evidence on the whole record.

Judgment reversed
and cause remanded.

CUPP, P.J., and BRYANT, J., concur.